

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 8, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DENNIS G. MCLAUGHLIN, III | § | CASE NO. 10-35641-SGJ-7 |
| | § | (CHAPTER 7) |
| DEBTOR. | § | |
| _____ | § | |
| TELCOENRGY CORPORATION, | § | |
| PLAINTIFF, | § | ADVERSARY NO. 10-03280-SGJ |
| | § | |
| VS. | § | |
| | § | |
| DENNIS G. MCLAUGHLIN, III | § | |
| DEFENDANT. | § | |

_____

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT DENNIS G. MCLAUGHLIN'S MOTION TO STAY ENFORCEMENT OF DEFAULT JUDGMENT AND TO DETERMINE JUDGMENT IS UNENFORCABLE

1

## I.     **INTRODUCTION**

The above-referenced adversary proceeding (the "Adversary Proceeding") was filed by TelcoEnergy Corporation ("TelcoEnergy"), a purported creditor of Dennis G. McLaughlin ("Mr. McLaughlin"), during the Chapter 7 bankruptcy case of Mr. McLaughlin[1] on September 15, 2010. The complaint listed TelcoEnergy as incorporated in Oklahoma. The complaint alleged numerous causes of action against Mr. McLaughlin, including, among others, tortious interference with a contract, fraud, misrepresentation, conspiracy to commit fraud, and violations of certain restraining orders issued in a state court case. The complaint also objected to dischargeability of the debts allegedly owed to TelcoEnergy pursuant to 11 U.S.C. § 523 and objections to discharge pursuant to 11 U.S.C. § 727.

TelcoEnergy, after eventually serving Mr. McLaughlin with the complaint, struggled to serve discovery related to the Adversary Proceeding on Mr. McLaughlin because Mr. McLaughlin purportedly: (1) switched lawyers, (2) changed residences, (3) refused to accept certified mail, (4) failed to respond to telephone contact, and (5) failed to attend scheduled section 341 meetings of creditors in the underlying bankruptcy case. TelcoEnergy was only able to serve Mr. McLaughlin with discovery requests when he was required to attend a show cause hearing in the underlying bankruptcy case for failing to properly prosecute the underlying bankruptcy case.

Mr. McLaughlin never filed any responsive pleading to the complaint in the Adversary Proceeding. The Bankruptcy Clerk entered a default on June 13, 2011. Next, TelcoEnergy filed a *Motion for Default Judgment* [DE # 17] on June 23, 2011. Mr. McLaughlin never responded to the motion for default judgment or otherwise appeared in the Adversary Proceeding. The court entered the *Order Granting Final Default Judgment* [DE # 24] on September 20, 2011, in favor of

---

[1] Case No. 10-35641.

TelcoEnergy against Mr. McLaughlin. The *Order Granting Final Default Judgment* awarded TelcoEnergy: (1) actual damages in the amount of $10,000,000, (2) attorneys' fees and costs in the amount of $127,385.44, and (3) prejudgment interest at 5% per annum, for the period of October 21, 2006, through September 11, 2011, in the amount of $2,446,575,34 (the "Default Judgment"). Mr. McLaughlin's underlying bankruptcy case was dismissed without Mr. McLaughlin receiving a discharge. The bankruptcy case and the Adversary Proceeding were closed.

On March 3, 2021, a motion to reopen the Adversary Proceeding was filed [DE # 30], which this court granted on April 16, 2021 [DE # 34]. On June 16, 2021, a *Notice of Assignment of Judgment* [DE # 36] was filed with an attached assignment agreement, dated March 15, 2019, which purported to assign the Default Judgment from TelcoEnergy, now listed as a Nevada corporation, to Family Assets Management ("FAM"). Both entities are owned and/or controlled by Peter Knollenberg ("Mr. Knollenberg"). FAM immediately began seeking post-judgment discovery and other relief from this court.

On October 18, 2021, Mr. McLaughlin filed the current *Defendant's Motion to Stay Enforcement of Default Judgment and to Determine Judgment is Unenforceable* [DE # 61] ("Defendant's Motion") to have the court determine whether the Default Judgment and the assignment to FAM are void, depriving FAM of standing to pursue the Default Judgment. Mr. McLaughlin argues the entity to which the Default Judgment was granted, TelcoEnergy Corporation in Oklahoma, never existed at any time. Therefore, according to Mr. McLaughlin, the Default Judgment granted is void and FAM does not have standing to collect on it. Further, at oral argument on the Defendant's Motion, the Defendant raised the issue of Mr. Knollenberg's divorce

settlement with his ex-wife that purported to convey to her 50% of the Default Judgment. Mr. McLaughlin argues this invalidates TelcoEnergy's assignment of the Default Judgment to FAM.

In response, FAM argues the listing on the complaint of TelcoEnergy Corporation as an **Oklahoma** corporation was a scrivener's error that should not render the Default Judgment void. The correct entity, TelcoEnergy Corporation in Nevada, should have been listed as the plaintiff on the complaint and is the recipient of the Default Judgment. Further, TelcoEnergy Corporation in Nevada, despite having its charter revoked post-judgment, but pre-assignment to FAM, had its charter revived in November 2021, retroactive back to the time of its original incorporation (September 20, 2002).[2]

At the hearing scheduled in this matter, the parties stipulated to the admission of certain documentary evidence and decided not to put on any testimony. Based on the documentary evidence and legal authority, the court finds, as detailed below, that the mislabeling of the correct plaintiff entity was a clerical error that the court can remedy *sua sponte* under Federal Rule of Civil Procedure 60(a), made applicable to the Adversary Proceeding through Bankruptcy Rule 9024. Second, the revocation of TelcoEnergy Corporation's corporate charter in Nevada and retroactive revival did not render the assignment to FAM or judgment void. Finally, the issue of Mr. Knollenberg's divorce that was raised at oral arguments does not render the judgment void. Thus, the court concludes that TelcoEnergy had standing to obtain the Default Judgment, FAM has standing to pursue the Default Judgment as assignee, and Defendant's Motion should be **denied**.

## II.     <u>BACKGROUND</u>

---

[2] It was represented at oral argument by counsel for FAM that the date, September 20, 2002, put on the revised certificate of revival from the Nevada Secretary of State (FAM Exhibit #1L) represented the original incorporation date of TelcoEnergy Corporation in Nevada. This original date of incorporation was not contested by Mr. McLaughlin.

### A. Events Leading to Default Judgment

On October 27, 2004, a share exchange agreement was entered between Mac Partners, LP, Mr. McLaughlin, on behalf of Trenton Lighthouse, LP, and Mr. Knollenberg, on behalf of TelcoEnergy Corporation.[3] The agreement listed TelcoEnergy Corporation as an Oklahoma entity. This agreement was the impetus for the Adversary Proceeding and prior Texas state court actions after the relationship between the parties soured.

On July 1, 2005, TelcoEnergy **LLC** in Oklahoma, owned by Mr. Knollenberg, had its organizational charter forfeited. In fact, an entity by the name of TelcoEnergy **Corporation** never existed in Oklahoma according to the Oklahoma Secretary of State.[4] However, an entity named TelcoEnergy Corporation **did** exist in Nevada and held an active corporate charter when the share exchange agreement was entered.[5] This Nevada entity was owned by Mr. Knollenberg.

In 2006, TelcoEnergy filed an original petition in the 359th Judicial District Court of Montgomery County, Texas.[6] The petition in the state court action was amended three times in 2010.[7] Each time, in the original and amended petitions, the plaintiff entity was listed as TelcoEnergy Corporation in Oklahoma.

On August 11, 2010, Mr. McLaughlin filed bankruptcy in the United States Bankruptcy Court for the Northern District of Texas under Chapter 7 of the Bankruptcy Code. The Adversary Proceeding was subsequently commenced by TelcoEnergy on September 15, 2010, and, along with monetary damages for the causes of action mentioned above, sought declaratory relief finding that the causes of action and any judgment entered in connection with the causes of actions were

---

[3] Defendant's Exhibit #1.
[4] Defendant's Exhibit #9.
[5] Defendant's Exhibit #10.
[6] Defendant's Exhibit #2.
[7] Defendant's Exhibit ## 3-5.

nondischargeable under Section 523 of the Bankruptcy Code. On January 3, 2011, TelcoEnergy filed *Plaintiff's First Amended Complaint Against Debtor* [DE # 5]. Both the original and amended complaint filed with the bankruptcy court listed the Plaintiff as TelcoEnergy Corporation in Oklahoma. The Default Judgment listed the Plaintiff as TelcoEnergy Corporation but made no mention to a state of incorporation.

On June 13, 2012, TelcoEnergy Corporation, listing itself as a Nevada company, assigned the Default Judgment to an entity named Cleaner Coal Technology, LLC ("CCT").[8] CCT is a Florida company also owned by Mr. Knollenberg. This was the first recorded assignment of the Default Judgment.

On October 1, 2014, the Nevada Secretary of State revoked the corporate charter of TelcoEnergy Corporation for failure to make an annual filing and pay filing fees.[9]

### B. *Events Occurring Post-Transfer of Judgment to FAM*

On March 15, 2019, TelcoEnergy Corporation in Nevada entered an agreement to transfer the Default Judgment to FAM.[10] Notably, this assignment of the judgment came after the prior transfer to CCT.

FAM propounded post-judgment discovery requests upon Mr. McLaughlin in April 2020 to assist in its attempts at collection on the judgment that, as of that time, was still unsatisfied (more than eight years after its issuance). The discovery was purportedly served on the Defendant on April 15, 2020, and a green card was signed and returned reflecting completed service of the discovery. After no responsive documents were produced, FAM then sent a letter dated August

---

[8] FAM Exhibit # 1F.
[9] Defendant's Exhibit #10.
[10] FAM Exhibit # 1G.

10, 2020, to the Defendant stating it would file a motion to compel production of the post-judgment discovery with the court if the requested discovery was not produced before August 14, 2020.

On February 10, 2021, FAM filed its *Amended Motion to Compel Post-Judgment Discovery* [DE # 29] to compel responses to the post-judgment discovery. FAM also moved to reopen the above-referenced Adversary Proceeding which had been closed on October 6, 2011.

The court held a hearing on both the motion to compel and the motion to reopen Adversary Proceeding on March 30, 2021. Mr. McLaughlin was noticed but did not appear. The court thereafter entered its *Order Granting Motion to Reopen the Adversary Proceeding and Motion to Compel* [DE # 34] which ordered Mr. McLaughlin to respond to post-judgment discovery within seven days of the entry of the order. The order warned that failure to produce the discovery within seven days could result in civil contempt of court.

FAM claimed to serve Mr. McLaughlin with the order granting the motion to compel on the same day it was entered. Mr. McLaughlin failed to respond to the post-judgment discovery requests within the seven days following the order granting the motion to compel.

On June 16, 2021, FAM filed its *Motion for Sanctions* [DE # 37] (the "Motion for Sanctions") seeking for the court to award reasonable attorneys' fees and order Mr. McLaughlin to physically appear in court with responses to post-judgment discovery in hand. Mr. McLaughlin was noticed of the hearing on the Motion for Sanctions, and, again, did not appear at the hearing held on July 29, 2021. The court, on August 5, 2021, entered its *Order Granting the Motion for Sanctions* [DE # 45] (the "Sanctions Order") ordering Mr. McLaughlin to pay $7,695.00 in reasonable attorneys' fees to FAM and appear on September 8, 2021, at 1:30 p.m. before the court with responses to post-judgment discovery in hand. Further, the court warned Mr. McLaughlin

that failure to appear at the hearing could result in the court issuing a bench warrant for his arrest. Mr. McLaughlin was purportedly served with the Sanctions Order.

The court held a hearing on September 8, 2021, in which Mr. McLaughlin once again failed to appear. Counsel for FAM appeared and informed the court that, despite her diligence, she was still unable to communicate with Mr. McLaughlin and still no post-judgment discovery had been produced.

The court entered its *Order: (1) Holding Dennis G. McLaughlin, III in Contempt of Court for Failure to Comply with Various Bankruptcy Court Orders; and (2) Issuing a Bench Warrant, Directing the United States Marshal to Take Custody of and Retain Dennis G. McLaughlin, III Until Further Order of this Court* [DE #50] on September 13, 2021. On September 20, 2021, Mr. McLaughlin was detained by the U.S. Marshal and brought before the court for a hearing on the same day. Mr. McLaughlin was represented by counsel at the hearing and counsel represented to the court Mr. McLaughlin would work on production of post-judgment discovery to FAM. The court orally released Mr. McLaughlin from U.S. Marshal custody at the end of the hearing and an *Order Releasing Mr. Mclaughlin, III from Custody of the U.S. Marshals* [DE # 52] documenting the release was entered the next day.

On October 18, 2021, Mr. McLaughlin filed the Defendant's Motion. On October 25, 2021, Mr. McLaughlin filed an objection to the Motion for Sanctions filed by FAM, raising the same arguments asserted in the Defendant's Motion. The court held a hearing on February 15, 2022, which was noticed as a hearing on: (1) the Sanctions Order (a follow-up hearing); (2) FAM's *Opposed Motion to Supplement Hearing Record* [DE # 56]; and (3) the Defendant's Motion. The court only heard argument on Defendant's Motion and determined the other motions would be continued until after the resolution of Defendant's Motion. As earlier mentioned, both sides

8

declined to put on witnesses. Both sides stipulated to the admission of all exhibits, including a declaration of Mr. Knollenberg. Mr. McLaughlin waived the right to cross-examine Mr. Knollenberg regarding his declaration. At the end of the hearing, the court took the matter under advisement.

Following the hearing, on December 1, 2021, Mr. Knollenberg, acting on behalf of TelcoEnergy Corporation in Nevada and CCT, became aware of the prior assignment of the judgment to CCT in 2012 and entered a "Corrective Recission and Revocation of Assignment and Assumption Agreement and Transfer of Judgment."[11] This agreement purported to rescind the prior assignment of the Default Judgment to CCT. The agreement was made to be effective as of March 14, 2019, the day before the assignment to FAM was executed.

## III.  JURISDICTION AND AUTHORITY

Bankruptcy subject matter jurisdiction exists in this matter, pursuant to 28 U.S.C. § 1334(b). This bankruptcy court has authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984.

No pending motions to withdraw the reference exist nor have ever been filed in the Adversary Proceeding.

## IV.  LEGAL ANALYSIS

The Defendant's Motion makes no reference to any specific legal authority for setting aside the Default Judgment assigned to FAM. However, the Defendant's Motion does argue that TelcoEnergy Corporation in Oklahoma never existed to obtain the Default Judgment, the transfer from this nonexistent Oklahoma entity to FAM is void, and the Default Judgment, accordingly, is

---

[11] FAM Exhibit # 1I.

unenforceable or void. The court interprets the Defendant's Motion as a motion for relief from the judgment under Federal Rule of Civil Procedure 60, made applicable to the Adversary Proceeding through Bankruptcy Rule 9024.

Under FRCP 60(b), the court, through a motion by a party, may relieve a party from a final judgment for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party;
> **(4) the judgment is void;**
> (5) the judgment has been satisfied, released, or discharged; is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

> Federal Rule of Civil Procedure 60(b).

Further, there is a timing requirement under which certain grounds for relief from a judgment under Rule 60(b) must be brought in order to be preserved:

> (1) *Timing*. A Motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

> Federal Rule of Civil Procedure 60(c)(1).

Specifically, the court interprets the Defendant's Motion as a request under FRCP 60(b) to find the Default Judgment void for a lack of standing. Mr. McLaughlin argues that neither TelcoEnergy Corporation in Oklahoma (which apparently did not exist to obtain or assign the judgment) nor FAM (which was transferred the Default Judgment from a wholly separate entity, TelcoEnergy Corporation in Nevada) had standing to pursue this judgment.

Mr. McLaughlin's argument as to why he should obtain relief from the judgment boils down to two main points. First, TelcoEnergy Corporation in Oklahoma did not exist and, thus,

could not obtain the judgment. Second, even if TelcoEnergy in Nevada is the correct entity, it was not listed on the complaint in the Adversary Proceeding and it, too, did not exist in the state of Nevada at the time the assignment to FAM took place. This allegedly renders the assignment void and deprives FAM of standing. Additionally, at oral argument, Mr. McLaughlin argued that Mr. Knollenberg's divorce decree with his ex-wife conveyed 50% of his interest in TelcoEnergy, which prevented TelcoEnergy from properly assigning the judgment to FAM.

In response, FAM argues that the listing of TelcoEnergy Corporation as an Oklahoma entity was simply a scrivener's error which was not remedied but was also never challenged by Mr. McLaughlin until now. The proper entity is argued to have always been TelcoEnergy Corporation in Nevada. FAM claims this to be nothing more than a clerical error that went unnoticed. Second, FAM argues that although TelcoEnergy Corporation in Nevada, the correct entity, had its charter revoked, the company was revived in 2021 retroactively back to its date of incorporation. Despite its charter being inactive at the time the assignment was executed, the retroactive revival makes it as if TelcoEnergy's corporate charter was never revoked. Thus, TelcoEnergy Corporation in Nevada should be treated as having had an active corporate charter and standing to assign the Default Judgment when the assignment was executed on March 15, 2019. Finally, with respect to the divorce, FAM argues that the divorce decree simply splits up the proceeds of the Default Judgment and did not prevent TelcoEnergy from assigning the judgment to FAM to pursue.

The court will address these arguments in the same order.

A. *Misnomer/Misidentification of a Plaintiff and Application of Rule 60(a)*

Although not cited by either party, Rule 60(a) provides for corrections to be made to a judgment by the court, with or without a motion made by a party, to correct clerical mistakes or omissions:

> (a) **Corrections Based on Clerical Mistakes; Oversights and Omissions**. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

> Federal Rule of Civil Procedure 60(a).

Courts have analyzed when it is proper for a court to correct the name of a party on a judgment or order when the name is listed incorrectly or unclearly on a judgment. Rule 60(a) is used properly when the correction to be made "make[s] the judgment or record speak the truth rather than something other than what was originally pronounced." *Jeff Smith Enterprises, LLC v. BMK Engineering, Inc.*, 2019 WL 8012419 at *1 (E.D. Va. Jan. 24, 2019) (citing *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 515 (6th Cir. 2016)). Correcting a party's name under Rule 60(a) is only appropriate if it does not change the party at issue. *Id.*

The Texas Supreme Court has recognized, in the context of an incorrect party name on a judgment or order, that there is a distinction between whether the incorrect name was that of a misidentification or a misnomer. *See Enserch Corp. v. Parker*, 794 S.W.2d 2, 4 (Tex. 1990). A misidentification—which has harsher consequences, such as limitations not being tolled—occurs when two separate legal entities exist and a party sues an existing entity with a name similar to that of the correct entity. *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999). A misnomer occurs when a party misnames itself or another party, **_but the correct parties are involved_**. *Id.* (emphasis added). Typically, misnomer cases involve a plaintiff who has misnamed the defendant,

and a petition involving this type of misnomer is nonetheless effective, for limitation purposes, when filed, with any amendment relating back to the date of the original filing. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 326 (Tex. 2009). A plaintiff misnaming itself is a misnomer. *See Chen v. Breckenridge Estates Homeowners Association, Inc.*, 227 S.W.3d 419, 421 (Tex.App.—Dallas 2007). A misnomer does not invalidate a judgment between parties where the record and judgment together point out the parties and subject matter to be bound. *Schismatic and Purported Casa Linda Presbyterian Church in America v. Grace Union Presbytery*, 710 S.W.2d 700, 708 (Tex..App.—Dallas 1986, writ ref'd n.r.e.). Courts are flexible in misnomer cases because the party intended to be sued has been served and put on notice that it is the intended defendant. *Greater Houston Orthopaedic*, 295 S.W.3d at 326. In a case in which the plaintiff misnames itself, the rationale for flexibility applies with even greater force. *Id.*

Similarly, federal courts have followed the same line of reasoning and found that when there is no confusion about the identity of the plaintiff—even if there is confusion about the plaintiff's proper name—a defendant suffers no prejudice because it was always clear against whom it was defending. When all parties at trial understood who the parties were, even if one of the parties was proceeding under the wrong name, courts will uphold the judgment and allow the judgment to be amended to reflect the correct party name. *Braun*, 828 F.3d at 516-17. *Jeff Smith Enterprises*, 2019 WL 8012419 at *1. The proper remedy for a misnomer is not to void a judgment under Rule 60(b). *See Id.* Rule 60(a) may be used to correct a party misnomer. *Dubon v. Delmas Meat and Fish*, 2011 WL 1703179, at *1 (S.D. Fla. Apr. 25, 2011).

Here, the court determines that the error made by TelcoEnergy was that of a misnomer, not a misidentification. The entity listed on the original and amended petitions in the bankruptcy court,

TelcoEnergy Corporation in Oklahoma, was a nonexistent entity[12] and was identified as such by Mr. McLaughlin. As the case law above notes, the error by a plaintiff in listing itself as a wrong, non-existent entity does not equate to misidentification. The name of the entity itself wasn't even incorrect in this instance, the state of incorporation was the error. "TelcoEnergy Corporation" was the correct name. The only "TelcoEnergy Corporation" that existed was in Nevada.[13] It was owned by Mr. Knollenberg—same as the individual who was alleged to own the non-existent, misnamed Oklahoma entity. This is a classic clerical error in which the state of incorporation shown on the underlying agreement was incorrect and then copied and pasted to the complaint in the state court actions and Adversary Proceeding. Further, the rationale of liberally allowing corrections to judgments when a plaintiff makes a misnomer in recording its own name on pleadings applies even stronger where a default judgment is entered. Simply put, where a defendant is served and has notice of a lawsuit, a defendant cannot claim confusion after a default judgment is entered, when the defendant chose never to answer the complaint, to raise this issue or others. There was no trial participation or motion filed by Mr. McLaughlin to suggest he believed the Plaintiff lacked standing. No reliance on the plaintiff listed on a complaint can be shown—to cause the confusion mentioned in the case law analyzing misnomers—when a default judgment is entered and a defendant never participates. Hence, there is no prejudice to Mr. McLaughlin from the misnomer in the complaint.

The court agrees with FAM's argument that the labeling of TelcoEnergy Corporation as an Oklahoma entity was a "scrivener's error" carried over from the underlying agreement and amounts to a misnomer. Thus, the court finds the proper remedy in this instance is not to void the

---

[12] Defendant's Exhibit #9.
[13] *See* Defendant's Exhibits ## 9 & 10.

Default Judgment under Rule 60(b), but to amend the Default Judgment *sua sponte* under Rule 60(a) to clarify the state of incorporation for TelcoEnergy Corporation as Nevada.

> B.     *Effect of Revocation and Revival of TelcoEnergy Corporation's Corporate Charter in Nevada*

Given the above ruling on the correct plaintiff to the Adversary Proceeding, TelcoEnergy Corporation in Nevada, the court must now analyze the effect of both the revocation and revival of its corporate charter by the Nevada Secretary of State. It is undisputed by the parties that TelcoEnergy Corporation was incorporated in Nevada on September 20, 2002, that its charter was revoked on October 1, 2014,[14] and that Mr. Knollenberg executed a revival of TelcoEnergy Corporation's corporate charter in Nevada during November 2021. It is undisputed that TelcoEnergy Corporation existed and had an active corporate charter in Nevada at the time the Default Judgment was entered on September 20, 2011. The issue turns on whether, during the time period in which its corporate charter was revoked, TelcoEnergy had the legal capacity to assign the Default Judgment to FAM on March 15, 2019, and whether the revival of its corporate charter retroactively cures any defect with the assignment of the Default Judgment.

Mr. McLaughlin argues that the corporate charter of TelcoEnergy Corporation in Nevada had been "permanently revoked," per the Nevada Secretary of State, and no longer existed as a Nevada corporation when the assignment to FAM occurred. Thus, TelcoEnergy allegedly had no right to assign or maintain an action on the Default Judgment and FAM could not receive the interest in or maintain an action on the Default Judgment standing in the shoes of TelcoEnergy. Mr. McLaughlin cites a case from a California state court in support of his position which found an assignee of a judgment from a corporation whose charter was suspended at the time of

---

[14] Defendant's Exhibit # 10.

assignment had no right to sue on the judgment and a suspended corporation lacks capacity to enforce a judgment or maintain a lawsuit. *See Cal-Western Bus. Servs., Inc. v. Corning Capital Group*, 221 Cal. App. 4th 304 (Cal. App. Dist. 2, 2013).

In response, FAM argues that the revocation of a corporate charter prohibits an entity from continuing to conduct business for the purposes for which it was created but does not deprive the entity of its capacity to sue or be sued, or the conveying of its property. Additionally, FAM contends, even if the assignment of the Default Judgment was "conducting business," the revival of its corporate charter in Nevada in November 2021 is retroactive to its date of original incorporation and makes it as if the business never had its corporate charter revoked. Accordingly, FAM argues the assignment of the Default Judgment from TelcoEnergy to FAM is valid, despite the corporate charter being inactive when the assignment occurred.

Under the laws of Nevada, where a corporation fails to make required filings, "the charter of the corporation is revoked and its right to transact business is forfeited." NEV. REV. STAT. § 78.175(2). "If the charter of a corporation is revoked and the right to transact business is forfeited as provided in subsection 2, all the property and assets of the defaulting domestic corporation must be held in trust by the directors of the corporation…" NEV. REV. STAT. § 78.175(5). Despite the right to transact business being forfeited, the Nevada Supreme Court has held that under the statutes governing LLCs, which are nearly identical to those governing corporations, the capacity of the corporation to sue or be sued is not lost. *See AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 585 (Nev. 2010). Further, for corporations following revocation:

> The corporation continues as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually to settle and close its business, to collect its assets, to collect and discharge its obligations, **to dispose of and convey its property**, to distribute its money and other property among the stockholders, after paying or adequately providing for the payment of its liabilities and obligations,

and to do every other act to wind up and liquidate its business and affairs, but not for the purpose of continuing the business for which it was established.
NEV. REV STAT. § 78.585(1) (emphasis added).

"[A]ny corporation which did exist or is existing under the laws of this state may…procure a renewal or revival of its charter for any period." NEV. REV. STAT. § 78.730. A corporation seeking revival may choose the effective date of the corporate charter, which may be any date between the original date of default to the date the certificate of revival is filed.[15] *Redl v. Heller*, 120 Nev. 75, 79 (Nev. 2004). A revival of a corporate charter "pursuant to NRS 78.730 relates back to the date on which the corporation's charter expired or was revoked and **renews or revives the corporation's charter and right to transact business as if such right had at all times remained in full force and effect**." NEV. REV. STAT. § 78.740(2) (emphasis added).

This court finds that TelcoEnergy was not "transacting business," under Nevada statutes and interpretations of those statutes by the Nevada Supreme Court, by assigning the Default Judgment to FAM. Under the clear wording of the Nevada Statute, "to dispose of and convey its property" are among the listed corporate powers that a corporation retains in Nevada once its charter has been revoked. *See* NEV. REV STAT. § 78.585(1). It cannot, and has not, been argued that assignment of its judgment was not a disposition or conveyance of TelcoEnergy's property as defined by the statute. Thus, the assignment of TelcoEnergy's judgment was a conveyance that did not fall under the definition of "transacting business" and was an action it retained capacity to perform despite the revocation of its charter.

Further, even if the assignment of the Default Judgment was considered "transacting business" under Nevada law, the revival of TelcoEnergy's corporate charter in Nevada

---

[15] FAM has stated that revival is retroactive to the date of TelcoEnergy's original date of incorporation. This court reads Nevada's statute to mean revival is retroactive to the time at which the corporate charter became inactive, but this is a distinction without a difference here.

retroactively cured any lack of capacity that existed at the time of the assignment. The revival of a corporate charter relates back to before the time period in which the corporate charter was inactive and makes it as if the corporate charter was always active. *See* NEV. REV. STAT. § 78.740(2). TelcoEnergy was given a certificate of revival from the Nevada Secretary of State in November 2021.[16] Once the certificate of revival was granted, it was as if TelcoEnergy always had an active corporate charter with the capacity to transact business, regardless of whether the assignment of the Default Judgment fell under that definition.

Mr. McLaughlin cites only one case, from a California appellate court, to argue why the Plaintiff lacked capacity to assign the Default Judgment after its corporate charter was revoked. In *Cal-Western Bus. Servs., Inc. v. Corning Capital Group*, the case cited by Mr. McLaughlin, the California court found that a suspended corporation had no capacity to maintain an action on a judgment and the plaintiff, who was the assignee of the judgment, lacked capacity to maintain the action. 221 Cal. App. 4th at 312. However, the facts of that case differ from that of the current case. There, the assignor of the judgment never revived or showed intent to revive its charter under current law. However, in the current case TelcoEnergy has already received its certificate of revival from the Nevada Secretary of State and currently has an active corporate charter. Further, the case cited by Mr. McLaughlin is a California court interpreting California law that seems to be inapposite in the context of the current case which demands the bankruptcy court look to precedent on what constitutes "transacting business" and the effects of revival under Nevada law.

Accordingly, the bankruptcy court finds that TelcoEnergy neither was transacting business nor lacked capacity to transact business following revival of its charter when it executed the

---

[16] FAM Exhibits ## 1J-1L.

assignment of the Default Judgment to FAM on March 15, 2019, despite its corporate charter being inactive at the time of assignment.

### C. Effect of the Divorce Decree on the Assignment of the Judgment to FAM

The final issue raised, which was raised at oral argument by Mr. McLaughlin, is the effect of Mr. Knollenberg's divorce from his ex-wife on the assignment of the Default Judgment to FAM. Specifically, the divorce decree entered into evidence from a Florida state court on June 8, 2018, contained a marital settlement agreement which purported to convey "50% of the $13M TelcoEnergy Federal Bankruptcy Judgment against McLaughlin," listed as worth $6,500,000, to Mr. Knollenberg's ex-wife.[17] Mr. McLaughlin argues that the assignment of the Default Judgment is void because: (a) the divorce decree could only convey Mr. Knollenberg's interest in TelcoEnergy, not the assets of the company (which included the Default Judgment), and (b) that loss of a 50% interest in TelcoEnergy in the divorce decree left Mr. Knollenberg without corporate authority to effectuate its assignment of the Default Judgment to FAM. In response, FAM argues that the divorce decree only gave Mr. Knollenberg's ex-wife a 50% interest in the proceeds collected from the Default Judgment and did not invalidate the assignment of the Default Judgment to FAM, because TelcoEnergy still held the entire interest in the Default Judgment.

The first issue is whether the property divided under the divorce decree was, in fact, the Default Judgment (or the proceeds thereof) or a 50% interest in TelcoEnergy. While the wording of the divorce decree seems unambiguous, reality and case law add a wrinkle. A "stockholder's interest in a corporation is limited to the legal rights flowing from the ownership of capital stock. Those rights do not include a pro-rata interest in corporate assets." *Anson v. Anson*, 772 So. 2d 52,

---

[17] Defendant's Exhibit #11.

54 (Fla. 5th DCA 2000). The corporation is a separate, legally recognized entity that holds title to its assets. *Id.* Although a corporation that is owned by the spouses is a marital asset, the corporation's earnings are not marital assets. *Doctor Rooter Supply & Serv. V. McVay*, 226 So. 3d 1068, 1072 (Fla. 5th DCA 2017). And, assets that are "acquired through corporate earnings are corporate assets until payments are made for services or as dividends." *Anson*, 772 So. 2d at 54. Accordingly, the case law supports Mr. McLaughlin's argument that the divorce decree cannot split the assets of TelcoEnergy, which is a separate legal entity with its own potential creditors and stakeholders, but could only split Mr. Knollenberg's interest in TelcoEnergy itself. This court agrees with Mr. McLaughlin's argument on this point.

The second issue, however, is the relevance of the divorce decree on the assignment of the Default Judgment to FAM. While Mr. Knollenberg's interest in TelcoEnergy may be split by the divorce decree, TelcoEnergy still separately owns the entirety of the Default Judgment. TelcoEnergy owned the entirety of the judgment when it assigned 100% of the judgment to FAM. Therefore, TelcoEnergy had ownership of the judgment and standing to pursue enforcement of the judgment when it assigned the judgment to FAM, who retains the same standing and now stands in the shoes of TelcoEnergy.

The potential issue here might be whether Mr. Knollenberg had the corporate authority to effectuate TelcoEnergy's assignment to FAM. ***This issue, however, does not belong to and cannot be pursued by Mr. McLaughlin.*** It would be an issue of the ex-wife to raise. The assignment is valid on its face. Importantly, Mr. McLaughlin is not faced with the threat of double recovery on the judgment because FAM is now the only entity with any right to recovery on the judgment.

Nothing has been presented to the court through argument or evidence on behalf of Mr. McLaughlin that would imply that, at any time, TelcoEnergy did not hold the entire interest in the

Default Judgment it assigned to FAM. Accordingly, this court finds that the divorce decree did not render the assignment to FAM void or leave FAM without standing to pursue the judgment.

### V. CONCLUSION

As addressed above, this court finds that FAM has standing to pursue the Default Judgment. Specifically, the court finds that: (a) the misnomer committed by TelcoEnergy in listing itself as incorporated in Oklahoma, (b) the revocation and subsequent revival of TelcoEnergy's corporate charter, and (c) the divorce decree entered in Florida state court did not operate to void the Default Judgment or deprive TelcoEnergy (and FAM as assignee) of standing to pursue the Default Judgment. Thus, the court will ***deny*** the Defendant's Motion.

**# # # #  END OF OPINION AND ORDER  # # # #**